## JONES *v.* CHANDLER ET AL.

[No. 8,989. Filed November 23, 1915. Rehearing denied April 4, 1916.]

1. WILLS.—*Construction.*—*Intention of Testator.*—Where the language of a will is free from doubt, it needs no construction; but where there is doubt, the intention of the testator, as gathered from the entire will aided by the rules of law applicable to the construction of wills, must be given effect. p. 504.

2. WILLS.—*Construction.*—*Vesting of Estates.*—In case of doubt as to the intention of the testator, the estate will be deemed to have vested. p. 504.

3. WILLS.—*Construction.*—*Remainders.*—*Vested or Contingent.*—Whether an estate is vested or contingent is determined by the right and capacity of the remaindermen to take possession of the estate, if the possession were to become vacant, and the certainty that the event upon which the vacany depends must happen some time, and not the certainty that it will happen in the lifetime of the remainderman. p. 505.

4. WILLS.—*Construction.*—*Postponement of Estates.*—The postponement of estates is looked upon with disfavor, and the intent

to do so must be clear and not arise from inference or construction.   p. 505.

5.  WILLS.— *Construction.* — *Vesting of Estates.* — *Remainders.* — *"Postponement of Estates."*—There is a distinction between the vesting of an estate and the enjoyment of a remainder, and words postponing an estate are presumed to relate to the beginning of the enjoyment and not to the vesting of such an estate, and the vesting of a remainder absolutely is preferred rather than the vesting contingently or conditionally.   p. 506.

6.  WILLS.—*Construction.*—*Remainder.*—Under a will devising land to the daughter of testatrix "to be held, possessed and enjoyed by her during her natural life and at her death to descend to her children, such as may be living", the testatrix intended to make a final disposition of her property, that the daughter should have a life estate, and that her grandchildren should be vested with such an estate as would descend to their heirs upon their death.   p. 507.

From Fountain Circuit Court; *I. E. Schoonover*, Judge.

Action by Oliver S. Jones against Pearl Chandler and others. From the judgment rendered, the plaintiff appeals.   *Affirmed.*

*O. B. Ratcliff*, for appellant.
*V. E. Livengood* and *F. E. Livengood*, for appellees.

MORAN, J.—Appellant sought to quiet the title to 114 acres of land in Warren County, Indiana, as against appellees and others, who were made defendants to a complaint in the statutory form. Issues being joined by an answer of general denial, the cause was submitted to the court on an agreed statement of facts, upon which the court found that appellant and appellee, Augustus Coke Cronkhite, were the owners each in fee simple of an undivided one-third part of the real estate in question, and that appellees, Pearl Chandler, Bertha R. Cronkhite, and Mary C. Williams, were the owners each in fee simple of an undivided one-ninth part thereof.   Judgment was rendered accordingly.   Appellant appeals upon the ground that the court

erred in not finding that he was the owner in fee simple of the entire 114 acres of real estate described in his complaint, and this error he predicates on the overruling of his motion for a new trial.

The agreed statement of facts discloses that Joseph Shelby died testate at Fountain County, Indiana, in 1846, and in December of the same year, his last will and testament was probated. By the provisions of his will, the real estate, to which appellant seeks to quiet the title, was devised to testator's widow, Sarah Shelby, so long as she should continue unmarried, and upon her marriage, the real estate was to be divided among his widow and five children. Sarah Shelby remained unmarried, and in addition to the title acquired by the will of her deceased husband, she obtained all the interest claimed in the real estate by the other devisees by mesne conveyances and by will from one of the devisees, who died testate shortly after the death of his father. Sarah Shelby died testate at Fountain County, Indiana, in 1860, and in December of that year, her last will and testament was duly probated. At the time of her death, she was the owner in fee simple of the 114 acres of real estate above mentioned. That part of the last will of Sarah Shelby necessary to an understanding of the point involved reads as follows:

"I will and bequeath to my daughter, Emily Jones, to be held, possessed and enjoyed by her during her natural life, and at her death to descend to her children, such as may be living, the following described land, to-wit: (Description of 114 acres of real estate)."

At the date of the execution of the will, Emily Jones had two children, Sarah B. Jones and Oscar N. Jones. Her other child, appellant, Oliver S.

Jones, was born October 24, 1862. Oscar N. Jones intermarried with Mary C. Cronkhite, and died intestate May 12, 1890, and left surviving his widow, who is now Mary C. Williams, one of appellees herein, and two children, appellees, Pearl Chandler and Bertha R. Cronkhite. Sarah B. Jones intermarried with Augustus Cronkhite and died December 1, 1902, leaving surviving her husband and one child, appellee, Augustus Coke Cronkhite; the husband thereafter conveying his interest in the real estate left by his deceased wife to appellee, Augustus Coke Cronkhite.

A solution of the question presented for review requires a construction of the last will and testament of Sarah Shelby. It will be observed that at the time of the death of Emily Jones, she was survived by one child, appellant Oliver S. Jones, her three grandchildren, the husband of her daughter Sarah B. Cronkhite, and the wife of her son, Oscar N. Jones; her other children having predeceased her. It is maintained by appellant that on the death of Sarah Shelby, the children of Emily Jones took a contingent estate in remainder, and that upon the birth of appellant, Oliver S. Jones, before the termination of the life estate, the estate opened up to let him in with the other children; and upon the death of Sarah B. Cronkhite and Oscar N. Jones, they were divested of their estate in remainder on their failure to survive the life tenant, and that appellant's estate was enlarged by their deaths, so that on the death of the life tenant, he became the owner of an absolute estate in fee simple of the real estate in question. It is the contention of appellees that, upon the death of Sarah Shelby, Emily Jones took a life estate and her children, then living, took a vested remainder in fee, subject to a diminution of their shares to let in appellant,

Oliver S. Jones, who was born before the termination of the life estate, and after the execution of the will and death of the testatrix; and upon the death of Sarah Cronkhite and Oscar N. Jones, their interest vested in the widow and widower and surviving children, respectively, in fee simple, as tenants in common with appellant, subject to the life estate of Emily Jones.

If the language employed in the drafting of the will is free from doubt, then we need go no further, as it needs no construction. If there is doubt, however, as to whether Sarah Shelby intended by the language of her will that, if any of the children of her daughter Emily predeceased their mother, such child's interest should go to the surviving children of Emily, or whether it should go to the descendants of the deceased child, this question must be answered by what was the intention of the testatrix, which must be gathered from the entire will aided by the rules of law applicable to the construction of wills involving the question under consideration. In this particular, the will of Sarah Shelby is not free from doubt. While the first maxim of construction of wills is that the intention of the testator should control, an examination of the adjudicated cases, however, upon the construction of wills, discloses that the courts have been very industrious in holding that in case of doubt, the estate will be held to have vested. This general proposition seems to be an established doctrine of the American law of real property. Of course, this is not saying that it has reached that degree of cogency that it is regarded as a rule of property. Like many other rules that are invoked in the interpretation of wills, they are rules of construction and not rules of property. "In the

construction of devises, the intention of the testator is admitted to be the pole star, by which the courts must steer; yet that intention is liable to be very much controlled by the application of technical rules, and a superior force of technical expressions." 4 Kent, Comm. 537. In 3 Jarman, Wills 699, is the following, "The intention of testators, when ascertained, is implicitly obeyed, however informal the language, in which it may have been conveyed; yet the courts, in construing that language, resort to certain established rules, by which particular words and expressions, standing unexplained, have obtained a definite meaning. * * * This results from the intendment of law, which presumes every person to be acquainted with its rules of interpretation, and consequently to use expressions in their legal sense, in the sense which has been fixed by adjudications to the same expressions occurring under analogous circumstances."

It has been laid down as a cardinal rule of construction as to whether an estate is vested or contingent is determined by the right and capacity of the remainderman to take possession of the estate, if the possession were to become vacant, and the certainty that the event upon which the vacancy depends must happen sometime, and not the certainty that it will happen in the lifetime of the remainderman. *Croxall* v. *Sherrerd* (1867), 5 Wall. 268, 18 L. Ed. 572; Tiedeman, Real Prop. §401; *Hoover* v. *Hoover* (1888), 116 Ind. 498, 19 N. E. 468; *Bruce* v. *Bissell* (1889), 119 Ind. 525, 22 N. E. 4, 12 Am. St. 436; *Clore* v. *Smith* (1910), 45 Ind. App. 340, 90 N. E. 917. Before determining whether the remaindermen in the case at bar would have the right and capacity to take possession of the estate, if the estate had become vacant, the additional

light is furnished by the general rules of
5. law applicable to the construction of the
will under consideration which are: The
postponing of estates is looked upon with disfavor;
the intent so to do must be clear and not arise
from inference or construction; that there is a
distinction between the vesting of an estate and
the enjoyment of a remainder; and words post-
poning an estate are presumed to relate to the
beginning of the enjoyment and not to the vesting
of such an estate; and that the vesting of a re-
mainder absolutely is preferred rather than the
vesting contingently or conditionally, partial in-
testacy being avoided, if possible. *Aspy* v. *Lewis*
(1899), 152 Ind. 493, 52 N. E. 756; *Alsman* v.
*Walters* (1916), 184 Ind. 565, 106 N. E. 879, 111
N. E. 921; *Myers* v. *Carney* (1908), 171 Ind. 379,
84 N. E. 400; *Clore* v. *Smith, supra; Taylor* v.
*Stephens* (1905), 165 Ind. 200; 74 N. E. 980;
*Campbell* v. *Bradford* (1906), 166 Ind. 451, 77 N. E.
849; *Harris* v. *Carpenter* (1887), 109 Ind. 540, 10
N. E. 422; *Moores* v. *Hare* (1896), 144 Ind. 573,
43 N. E. 870. In *Aspy* v. *Lewis, supra*, the testator
devised to his wife all his real estate, so long as she
remained his widow, and the full possession thereof
to his only daughter at the death or marriage of
his widow, providing the daughter should be living,
and if not, to go to his brothers and sisters. The
widow never remarried, the daughter married and
died before her mother, leaving children. It was
held that the daughter took a fee, which vested
absolutely on the testator's death, and which
descended to her heirs. Numerous cases might
be cited in support of this principle.

If appellant's contention is correct, that upon the
death of his brother and sister, notwithstanding

they left issue, he became vested with the interest they had in the real estate in question during their lifetime, then this same line of reasoning would divest appellant of a transmissible estate, had he died subsequent to the death of his brother and sister and prior to the life tenant. This condition would bring about partial intestacy. If we adopt appellant's construction of the will, then Sarah Shelby in fact devised but a life estate in her real estate, and this runs counter to the rule of construction that partial intestacy is not favored by the courts in the construction of wills. An examination of the entire will discloses that the testatrix intended to make a final disposition of her property, and that in so doing, she intended her daughter to have a life estate, and her grandchildren to be vested with such an estate as would descend to their heirs upon their death.

In the light of the facts and the foregoing authorities, we have reached the conclusion that, upon the death of Sarah Shelby, the fee simple title to the 114 acres of real estate described in the complaint vested in Oscar N. and Sarah B. Jones, subject to diminution to let in appellant, an after-born child, and upon the death of Oscar N. and Sarah B. Jones, their interests passed to their heirs, the appellees herein, as tenants in common with appellant.

The court did not err in overruling appellant's motion for a new trial. Judgment affirmed.

NOTE.—Reported in 110 N. E. 235. As to reversions and remainders, see 32 Am. St. 778; 113 Am. St. 55. As to sufficiency of provision as to after-born child to prevent revocation of will, see 43 L. R. A. (N. S.) 1195. As to admissibility of extrinsic circumstances in ascertaining intention of testator in respect to disinheriting after-born child, see 13 L. R. A. (N. S.) 781.