ST. MARY'S HOSPITAL OF EVANSVILLE *v.* LONG ET AL.

[No. 27,084. Filed December 19, 1938.]

*Phelps F. Darby,* for appellant.

*McGinnis, Waller & McGinnis* and *Louis L. Roberts,* for appellees.

SHAKE, J.—This is an appeal from a declaratory judgment construing the last will and testament of Dr. Edward B. Long and-giving directions concerning the disbursement of certain income arising from his estate. The action was commenced by the appellee bank, as

trustee of certain trusts created by the will, and all other parties in interest were named as defendants.

Item five of the will created ten separate trusts, one for each of nine named relatives and servants of the testator, and the tenth to be known as the "Doctor Edward B. Long Foundation." It directed that the net income of each of said separate trusts (other than the foundation) was for the sole use and benefit of the respective beneficiary "so long as" said beneficiary "shall live." The language creating the nine individual trusts was identical excepting as to that in favor of Lillie Long, an invalid sister, which directed, among other things, that the fund set aside for her benefit should be used toward the payment of the expenses of her last sickness and funeral and for the erection of a suitable marker at her grave. In the case of the eight other individual trusts, any balances remaining in the funds at the death of the beneficiaries were to be turned over to the foundation. Said item five further provided:

"Upon the deaths of such of the respective persons aforenamed for whose respective uses and benefits the respective aforesaid trusts from one to nine, both inclusive, are created as aforesaid as shall become effective in the contingencies aforesaid, then said respective trusts shall terminate and the Trustee shall as soon as practical thereafter settle and close such respective trusts and pay, turn over and/or deliver the respective balances thereafter remaining in said respective trusts or said respective lots, blocks or parcels, to the Trustee for the use and benefit of said trust, lot, block or parcel ten and the same shall become, be and constitute a part thereof or a part of the trust to be known as the 'Doctor Edward B. Long Foundation.'

"The trust to be known as the 'Doctor Edward B. Long Foundation' is and shall be for the charitable

uses and purposes of the institution or association known as St. Mary's Hospital at Evansville, in the County of Vanderburgh, and State of Indiana, the same being incorporated under the name of St. Mary's Hospital of the City of Evansville, Indiana, and its successors.

\* \* \*

"Out of the income of the property of the trusts the Trustee shall first pay all taxes, if any, and the ordinary costs and expenses of administration of the trusts, including reasonable compensation to the Trustee and the Trustee's attorneys and counsel, and pay the net income thereafter remaining to the respective beneficiaries of the respective trusts monthly, quarterly, semi-annually or annually as the Trustee and said respective beneficiaries may agree, but in case of inability or failure to agree respecting the time of payment thereof the said net income shall be paid by the Trustee as soon after receipt and as often as it deems practical and convenient, the Trustee having due and proper regard for the interests of the beneficiaries."

All of the beneficiaries survived the testator and they agreed with the trustee for quarterly settlements of the income account. The date of the testator's death was May 22, 1930. The trust funds were segregated in December, 1933, and the trustee distributed the quarterly income as of March 10, 1934. Rebecca Long, one of the beneficiaries, died on May 7, 1934, and a controversy arose between her sole heir and the trustee with reference to the disposition of the income from that part of the trust fund set apart for her, earned and accrued since March 10, 1934, and unpaid at the time of her death. On the occasion of the oral presentation it was suggested that other beneficiaries had since died and that the issues were so formulated that the disposition of the question under consideration would be controlling

with respect to their interests, as well as to those still surviving.

The items of income in controversy fall into three groups, namely, income collected and on hand prior to Rebecca Long's death; interest coupons matured prior to her death, but delinquent and not collected until after her death; and income maturing and collected after her death. It is the contention of appellant that all the income, accumulated, earned, and accrued, but undistributed, at the death of Rebecca Long became and constituted a part of the Doctor Edward B. Long Foundation, while appellees assert that such income should be apportioned as of the date of Rebecca Long's death and paid to her sole heir at law.

The cardinal rule in the interpretation of wills, to which all other rules must bend, is that the intention of the testator shall prevail, provided that it is consistent with the rules of law. *Dickey* v. *Citizens State Bank of Fairmount* (1933), 98 Ind. App. 58, 63, 180 N. E. 36. It must be conceded that it was within the testamentary power of Dr. Long to direct that his beneficiaries should, or should not, have the benefit of an apportionment of the net income involved, had he indicated his intention by the use of clear and unambiguous language. In other words, if the language employed is sufficiently specific to disclose the testator's intent, we shall have no occasion to resort to the rules of law applicable to indefinite or ambiguous provisions, or to those which govern when the instrument is silent on the subject. The parties are in agreement upon the proposition that the terms and provisions of the will with respect to the matter in litigation are clear and unambiguous, and this court shares the same view, although each of the parties asserts that the terms, fairly interpreted, sustain his respective contention.

Annuities are fixed sums payable at stated times

(not necessarily annually) and it may be stated as a general rule that an annuity cannot be apportioned, since there is nothing earned and nothing due until the day for payment arrives. See *Heizer* v. *Heizer, Admr.* (1880), 71 Ind. 526. Measured by the definition just stated, the provisions of Dr. Long's will for the distribution of net income to the beneficiaries named therein, clearly did not create annuities. The sums payable thereunder were not fixed, but were made dependent upon the net income from the trust estate. The will indicates that the testator desired that those whom he named as the objects of his bounty should enjoy the benefits of his philanthropy as the earnings accrued, rather than at stated intervals. It was provided that the net income should be paid to the beneficiaries "monthly, quarterly, semi-annually or annually as the Trustee and said respective beneficiaries may agree, but in case of inability or failure to agree respecting the time of payment thereof the said net income shall be paid by the Trustee as soon after receipt and as often as it deems practical and convenient, the Trustee having due and proper regard for the interests of the beneficiaries." From this language it would appear that the testator intended that the net income should be paid to the beneficiaries as soon and as often as practicable after receipt by the trustee.

In support of its contention, the appellant relies upon *Nading* v. *Elliott, Trustee* (1893), 137 Ind. 261, 272, 36 N. E. 695. That case involved the construction of a clause in a will reading as follows: " 'I also bequeath to my wife, Amanda Warner, the interest or use of four thousand dollars from my personal estate. To the interest of this four thousand dollars, she shall be entitled while she lives.' " Respecting the provision just quoted, this court said: "The words above set out would have entitled the widow's estate to the interest accrued up

to the date of her death." But the will further provided: "At the death of my wife, . . ., the principal *and unpaid portion of interest of the whole amount bequeathed to her* . . . shall descend and vest in my children." (Our italics.) Consequently the court then observed that the language last quoted curtailed the effect of the gift. It was accordingly held that the undistributed interest in the hands of the trustee at the death of the widow was payable to the testator's children. The effect of *Nading* v. *Elliott, supra,* therefore, is to hold that the interest earned on the trust estate would have been apportionable to the widow's personal representative, except for the conditions imposed by the subsequent clause.

Appellant calls attention to a provision in item five of the will, quoted in the forepart of this opinion, wherein it is stipulated that the "respective balances" remaining in the several trust funds at the deaths of the beneficiaries shall become a part of the Doctor Edward B. Long Foundation. We cannot agree that the words "respective balances" have reference to the principal trust funds and the accrued but undistributed income therefrom. We think it more logical to conclude that "respective balances" refer to the trust funds proper. Our view is strengthened by the fact that, as already pointed out, the other provisions of the will contemplate that the net income shall not be retained by the trustee longer than is practicable. In support of the construction sought to be placed upon the term "respective balances," the appellant has cited *Kounse* v. *Dronberger* (1932), 94 Ind. App. 141, 180 N. E. 28. An examination of that case discloses that the word "balance" as used therein was interpreted to include personal as well as real property, and we find nothing in the opinion to lead us to conclude that the will of Dr. Long contemplated that the earned and un-

distributed net income of the trust funds should, in any event, be added to the corpus.

*Brunson, Admr.* v. *Martin et al., Exr.* (1899), 152 Ind. 111, 52 N. E. 599, involved the interpretation of a will, by the terms of which the testator bequeathed to his wife the use of all of his property, both real and personal, for and during her lifetime, with a provision that "she shall use but the rents and profits of said estate, or so much thereof as she can make profitable use of." In a further provision of the will the testator enjoined upon his executors the duty to assist her and attend to all her business if she so desired. The widow survived her husband five years, during which time she permitted the income to accumulate until it aggregated $8,000, without availing herself of the power to use any part thereof. This court pointed out, in holding that the accumulated income belonged to the residuary legatees rather than to the estate of the widow, that the will of the husband left it to her discretion (which she did not see fit to exercise) as to what part of the income, if any, she might use. The Brunson case is clearly distinguishable from the one at bar. The distribution of the income from the trust funds created by the will of Dr. Long is not dependent upon the discretion of the beneficiaries. By express terms, the will now before us enjoins upon the trustee the obligation to distribute the net income "as soon after receipt and as often as it deems practical and convenient, the Trustee having due and proper regard for the interests of the beneficiaries." The Brunson case is therefore not controlling.

Taking into consideration all of the provisions of Dr. Long's will hereinbefore pointed out and discussed, and the further fact that the several beneficiaries are to be entitled to the net income "so long as they shall live," we cannot escape the conclusion that the meaning of the will is clear upon its face and that

the income earned, accrued, and accumulated, but undistributed, at the time of the death of Rebecca Long, became the property of her sole heir and should not be added to the corpus of the trust that then passed to the Doctor Edward B. Long Foundation. Since we have reached this conclusion, it becomes unnecessary for us to consider further the problem that is presented by a will that is indefinite or silent upon the subject of apportionment. Neither is it necessary for us to consider the nature and character of the securities constituting that part of the trust estate set aside for the benefit of Rebecca Long, since the character of the investments would have no controlling effect on the disposition of the income.

The trial court's conclusions of law, upon which errors were predicated, are in harmony with our views as above expressed.

Judgment affirmed.